NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

MICROSOFT CORPORATION,     )

                            )     Hon. Harold A. Ackerman

         Plaintiff,     )

                            )     Civil Action No. 06-3206 (HAA)

           v.           )

                            )     **OPINION AND ORDER**

LAWRENCE SILBERSTEIN,     )

an individual and d/b/a INVESTMENT     )

TECHNOLOGIES INC.,     )

                            )

         Defendant.     )

_____)

Lathrop B. Nelson, III, Esq.
MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
*Attorneys for Plaintiff*

Lawrence Silberstein
4002 Hana Road
Edison, NJ 08817
*Pro se Defendant*

## ACKERMAN, Senior District Judge:

      This matter comes before the Court on an unopposed motion (Doc. No. 25) for summary

judgment filed by Plaintiff Microsoft Corporation ("Microsoft").  Microsoft seeks summary

judgment on liability and damages with regard to its federal copyright and trademark

infringement claims and related state law claims.  Microsoft further requests an award of

attorneys' fees and costs, as well as a permanent injunction prohibiting Defendant Lawrence

Silberstein, as an individual and doing business as Investment Technologies, Inc. (collectively

"Defendant" or "Silberstein"), from engaging in any future infringing activities.  For the following reasons, Microsoft's motion will be granted.

## *Background*

As will be discussed further, Defendant has not opposed Microsoft's motion for summary judgment, despite numerous opportunities to do so.  Therefore, this Court must "accept as true all material facts set forth by the moving party with appropriate record support."  *Morrison v. Phillips*, No. 06-812, 2008 WL 4308215, at *5 (D.N.J. Sept. 16, 2008) (quoting *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).  The following factual discussion represents this Court's findings of undisputed facts as supported by the extensive filings submitted by Microsoft, including Defendant's deposition.

## I.      Factual Background

Microsoft develops, licenses, advertises, and distributes computer software programs.  It distributes its software in all 50 states and throughout the world.  At issue in this case is Microsoft's Windows XP Professional software program ("Windows XP Pro").  Microsoft holds a registered federal copyright (No. TX 5-407-055) in Windows XP Pro.  It also owns valid, registered federal trademarks in: "MICROSOFT" for computer programs and computer programming services (Trademark and Service Registration No. 1,200,236); "MICROSOFT" for computer hardware and software manuals, newsletters, and computer documentation (Trademark Registration No. 1,256,083); "WINDOWS" for computer programs and manuals as a unit

(Trademark Registration No. 1,872,264); and COLORED FLAG DESIGN for computer software and manuals sold as a unit therewith (Trademark Registration No. 2,744,843).

Microsoft sells its computer software in part via a network of authorized distributors, and directs system builders and software resellers to these entities.  Relatedly, Microsoft maintains a system of authorized replicators but does not license these entities to copy, or "burn," Microsoft software onto recordable CDs, or "CD-Rs."  Rather, Microsoft's authorized replicators may only manufacture Microsoft software for retail or system builder distribution on media that is readable but not recordable, such as CD-ROMs or DVDs.[1]

Defendant Lawrence Silberstein founded Investment Technologies, Inc. ("Investment Technologies"), and served as its CEO.  During his time at Investment Technologies, Silberstein had responsibility for selecting vendors of Microsoft software, purchasing that software, and redistributing and reselling that software.  Silberstein has distributed purported copies of Windows XP Pro on various Internet auction websites and under various seller identities and email addresses.

In February 2005, an investigator for Microsoft purchased two units of Windows XP Pro software from the Internet auction website www.iOffer.com.  The transaction summary for this purchase listed the seller as Lawrence Silberstein, with the email address InvestTech@isp.com, and subsequent communications from this email address confirmed that Silberstein, acting as Investment Technologies, was the seller.  Silberstein distributed to the investigator/buyer two CD-Rs onto which he had copied Windows XP Pro.  The words "XP Pro OEM w/sp2" were

---

[1]Data may be copied, or "burned," onto a CD-R by using a device commonly known as a CD burner.  Data may not be copied or burned onto a non-recordable CD.

handwritten on the CD-Rs.  The CD-Rs were contained in jewelcases which included paper copies of images of a Windows XP Pro retail box, a purported Microsoft license key code, and text stating "This is a legal CD.  Not for reproduction.  Microsoft & Windows are trademarks of Microsoft Corp.  This certifies legal transfer of Product Key & ownership from Investment Technologies Inc. to ____."  (Glimpse Decl., Ex. B.)  The package sent by Silberstein also included a document assuring his customers that the CD-Rs were legitimate.  In this document, Silberstein claimed that his business bought "more than 11 copies" of Windows XP Pro and subsequently went out of business before installing the software.  (*Id.* at Ex. C.)  To explain the use of CD-Rs, he stated that the actual Windows XP Pro CDs were "lost during a business move."  (*Id.*)  He asserted that both he and his lawyer obtained approval from Microsoft to sell and transfer copies of Windows XP Pro.

Microsoft determined that the burned copies of Windows XP Pro distributed by Silberstein through iOffer.com were counterfeit and violated Microsoft's intellectual property rights.  Microsoft sent Silberstein a cease and desist letter on July 29, 2005.  This letter informed Silberstein that he distributed counterfeit Microsoft software, demanded that he stop all infringing activity, and provided information on authorized distributors and ways he could receive assistance in identifying counterfeit Microsoft software that he should not distribute.  In his deposition, Silberstein admitted receiving this letter from the Microsoft Compliance Support Program.  (Silberstein Dep. 61:7-18.)  A Microsoft representative spoke with Silberstein on August 4, 2005, and discussed the cease and desist letter.  Silberstein told the representative that his business downloaded purported Microsoft software, burned copies onto CD-Rs, and sold

those copies on Internet auction websites.  The Microsoft representative told Silberstein that he should not distribute these CD-Rs.

In October 2005, Silberstein distributed a counterfeit CD-R containing a burned copy of Windows XP Pro to a Microsoft investigator who purchased the software on iOffer.com. Silberstein thus continued to infringe Microsoft's copyright and trademarks after receiving the first cease and desist letter and speaking with a Microsoft representative who informed him that his activities were infringing.  Microsoft sent Silberstein another cease and desist letter, dated January 16, 2006.  On two separate occasions in April and June 2006, Silberstein again distributed to Microsoft investigators, through Internet auction sites, counterfeit CD-Rs containing burned copies of Windows XP Pro.  These counterfeit copies were again distributed with similar copied packaging, purported Microsoft license key codes, and text indicating that the CD-Rs were legal.  Silberstein yet again sold and distributed CD-Rs containing copies of Windows Pro XP in November 2006 – four months after Microsoft filed its Complaint in this case alleging copyright and trademark infringement.

Silberstein admitted at deposition that he and Investment Technologies resold Microsoft software in the years 2003-2007.  (Silberstein Dep. 58:13-60:19.)  Silberstein stated that he purchased and downloaded approximately a dozen copies of Windows XP Pro software from oem-secure-shop.biz and oemcdshop.com, and obtained license key codes for these copies.  He claimed that he bought the software in this fashion, rather than from a retail store, because "the whole purpose of buying the OEM version was that it was less expensive."  (Silberstein Dep. 40:6-7.)  He saved the copies onto his computer hard drive, and then copied the software onto CD-Rs that he resold through various Internet auction sites.  At his deposition, Silberstein

claimed that he did not contact Microsoft prior to purchasing copies of Windows XP Pro from oem-secure-shop.biz and oemcdshop.com.  (*Id.* at 41:24-42:21.)  Had he done so, he would have learned that the internet vendors he used were not authorized by Microsoft to distribute downloads of Microsoft software to resellers such as Silberstein.  He failed to contact Microsoft to investigate these vendors and the legality of his downloaded copies because he "would have thought it Microsoft's responsibility to police vendors." (*Id.* at 42:18-20.)  He also did not review any of the information Microsoft provided him regarding how to verify that he was dealing in genuine, authorized Microsoft software.

Silberstein admitted that he had distributed Microsoft software on the Internet auction website eBay until eBay shut down his auctions because it appeared that he was selling infringing, unauthorized Microsoft software.  When asked whether he was concerned after eBay prevented him from selling on its site, Silberstein responded that he was "irritated" but that he simply found other websites to use.  (Silberstein Dep. Vol. II at 45:17.)  Counsel then asked him whether he ever thought "maybe [he] shouldn't be selling the software the way [he] was selling it," to which Silberstein answered, "No.  On the contrary, I thought that Microsoft was overstepping legality." (*Id.* at 45:19-23.)

Microsoft filed its Complaint in this matter in July 2006.  Microsoft's claims against Silberstein, as an individual and doing business as Investment Technologies, include: 1) copyright infringement; 2) federal trademark infringement under the Lanham Act; 3) Lanham Act false designation of origin; 4) unfair competition pursuant to N.J.S.A. § 56:4-1; and 5) unfair competition pursuant to New Jersey common law.  Microsoft seeks damages and a permanent

injunction against Silberstein to prevent him from any future infringement of Microsoft's intellectual property.

Silberstein filed an Answer pro se. He claims that he is "retired and indigent" due to the failure of his business, and that he has assets of less than $1,000. (Answer at ¶ 3.) He asserts that he is merely "selling software left over from that business pursuant to 17 US Code 117," and supplements his Social Security disability income with "whatever [he] [is] able to sell on some online auction sites, including books, audio CD's, computer accessories, and software previously purchased" (*id.* at ¶¶ 2, 5).[2]

Microsoft filed this motion for summary judgment on all of its claims in April 2006.


## II.    Silberstein's Failure to Respond to Microsoft's Motion

Not only did Silberstein engage in allegedly infringing conduct several months after Microsoft brought this suit, Silberstein has further demonstrated his indifference to the instant proceedings by failing to respond to Microsoft's summary judgment motion, despite repeated opportunities to do so. This Court understands that Silberstein is in poor health, but his medical condition does not excuse his willful ignorance of court orders in this matter, or his failure to honor his own representations to the Court regarding his participation in this case.

---

[2]In his Answer, Silberstein asserts that he was contacted by "Mary" from the Microsoft Compliance Department in January 2006 and discussed the "legalities of reselling software under the First Sale Doctrine of the Federal Copyright Act." (*Id.* at ¶ 6.) Silberstein alleges that the Microsoft representative "told [him] that Microsoft had Congress pass an act in December 2007 prohibiting the sale of Windows XP, regardless of the prior provisions of the Copyright Act. [He] pointed out that if such legislation was passed it would seem that it could not be applied ex post facto to software released prior to December 2005; to which the Compliance Department had no comment." (*Id.*) On this basis, Silberstein stated in his Answer that he planned to move for summary judgment. However, he has not filed any such papers with this Court.

Following Microsoft's filing of the instant motion, Silberstein asked for an extension of his time to respond to May 18, which the Court granted.  No response was filed.  Silberstein also failed to participate in several telephone and in-person status conferences with Magistrate Judge Salas in July and September 2008.  Silberstein finally participated in an on-the-record telephone conference before Magistrate Judge Salas on October 27, 2008.  The court conducted this conference by phone due to Silberstein's medical condition.  Silberstein claimed that he had received a package from Microsoft, presumably containing a copy of its summary judgment motion, but that he "actually ha[sn't] even opened it."  (Tr. 10/27/08 at 5:7.)  He also asserted that he had filed his own summary judgment motion, and asked that the court consider that motion as his response to Microsoft's motion.  The docket reflects that Silberstein never filed any such motion prior to the telephone conference.

Magistrate Judge Salas ordered Silberstein to resend his allegedly previously-filed papers by November 3, 2008 (Doc No. 33), and allowed that these papers could serve as Silberstein's pro se opposition to Microsoft's motion.  Silberstein did not file any documents with the Court by November 3.  At the present time, two months after the final opportunity granted by Magistrate Judge Salas, Silberstein has not filed any documents with the Court or otherwise contacted the Court in any way with regard to Microsoft's motion.[3]

_____

[3]As Magistrate Judge Salas pointed out to Silberstein during the telephone conference, the Clerk's Office scans any documents received from a pro se litigant, so any inability of Silberstein to utilize the Court's electronic filing system has not prevented him from filing papers with the Court.  Furthermore, the record reflects that Silberstein first sent his Answer solely to opposing counsel, and only later sent it directly to the Court upon realizing that he had not properly filed it.  Based on this history, Silberstein certainly knows how to file documents with this Court.  He cannot rely on his pro se status to excuse his failure to oppose Microsoft's motion.

Silberstein has had more than sufficient time to oppose Microsoft's motion, or to file his own.  He has neglected to do so, despite invitation by the Court and the promises he made to the Court.  The Court acknowledges Silberstein's poor health, but his medical condition does not justify his continued disregard of these proceedings as evidenced by his failure even to open the motion package from his adversary, and by his failure to adhere to Magistrate Judge Salas's order.  For these reasons, this Court will consider Microsoft's motion for summary judgment to be unopposed.

### *Analysis*

## I.      Standard of Review

In any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, the moving party bears the burden of demonstrating that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Put differently, summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir.), *cert. denied*, 488 U.S. 870 (1988).  An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue.  *See Anderson*, 477 U.S. at 247-48.  A fact is material if it influences the outcome under the governing law.  *Id.* at 248; *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).

A motion for summary judgment implicates two burdens: the burden of persuasion and the burden of production.  The burden of persuasion defines the extent to which the party bearing

the burden must convince the trier of fact of some disputed proposition.  Sometimes referred to as the burden of proof, *see Director, Office of Workers' Compensation Programs v. Greenwich Collieries*, 512 U.S. 267, 276 (1994), this burden typically does not shift, but rather remains with the party upon which it is originally placed.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (noting that Title VII plaintiffs bear the ultimate burden of persuasion at all times).  The burden of production refers generally to a party's burden to go forward with evidence to support its claim.  *Greenwich Collieries*, 512 U.S. at 272.  Unlike the static burden of persuasion, the burden of production may shift in response to presumptions that are created when a movant establishes, by a preponderance of the evidence, a prima facie case.  *Hicks*, 509 U.S. at 506-07.

In the context of a generic motion for summary judgment, the movant bears an initial burden of production.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its initial burden of production, the movant must "inform the district court of the basis for its motion, and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* (internal quotations omitted).  When the movant has carried its initial burden, the burden of production shifts to the non-movant.  The non-movant must then present evidence establishing the existence of a genuine issue of material fact requiring resolution at trial.  *Jersey Cent. Power & Light*, 772 F.2d at 1109.  This evidence need not necessarily be admissible at trial, *Celotex*, 477 U.S. at 324, but it must be actual evidence that rises above mere allegations, and, above all else, it must raise a genuine issue of material fact, *United States v. Reve*, 241 F. Supp. 2d 470, 475 (D.N.J. 2003).

A district court faced with a summary judgment motion must view all evidence and the inferences to be drawn therefrom in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is inappropriate for a district court to resolve factual disputes or make credibility determinations at the summary judgment stage. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Indeed, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.* This does not mean, however, that a district court may ignore the weight of the evidence. *Id.* "[I]f the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court should enter summary judgment in favor of the moving party." *Peterson v. AT&T*, No. 99-4982, 2004 WL 190295, at *3 (D.N.J. Jan. 9, 2004) (quoting *Anderson*, 477 U.S. at 249).

In considering an unopposed summary judgment motion, the court must "accept as true all material facts set forth by the moving party with appropriate record support." *Morrison*, 2008 WL 4308215, at *5 (quoting *Anchorage Assocs.*, 922 F.2d at 175). Even where the court accepts the moving party's supported facts, "summary judgment will not be granted unless 'appropriate,' and only if the moving party is entitled to judgment as a matter of law." *Morrison*, 2008 WL 4308215, at *5 (quoting Fed. R. Civ. P. 56(e)). In other words, this Court cannot grant a summary judgment motion merely because it is unopposed. *See, e.g.*, *Fernandez v. Black Millwork Co.*, No. 06-3659, 2008 WL 4279754, at *3 (D.N.J. Sept. 15, 2008).

## II.    Copyright Infringement

The first claim of Microsoft's Complaint charges Silberstein with copyright infringement. The Copyright Act grants a copyright owner the exclusive right to reproduce and distribute copies of the copyrighted work.  17 U.S.C. § 106(1)-(3).  "To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."  *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002).  To establish liability, a defendant's knowledge or intent is irrelevant; state of mind only comes into play when considering damages. 17 U.S.C. § 501(a); *see, e.g.*, *Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 918 (E.D. Tenn. 2006); *Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F. Supp. 2d 800, 805 (E.D. Mich. 2000).

Based on the undisputed record, Microsoft has demonstrated both of the requirements to show copyright infringement.  Microsoft has produced its copyright registration certificate for Windows XP Pro (Compl., Ex. 1), and such a certificate "constitute[s] *prima facie* evidence of the validity and ownership of the material."  *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290-91 (3d Cir. 1991); *Kepner-Tregoe, Inc. v. Executive Dev., Inc.*, 79 F. Supp. 2d 474, 484 (D.N.J. 1999).  By failing to oppose Microsoft's motion, Silberstein has not produced any evidence to rebut this presumption.  *See, e.g.*, *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 440 (D. Del. 2005) ("To overcome the presumption of validity and ownership, the defendant must present evidence to challenge the validity of the copyrights."). The undisputed evidence also shows that Silberstein copied and distributed Microsoft's copyrighted work by selling counterfeit, infringing copies of Windows XP Pro.  Microsoft has

met its burden to establish that Silberstein has infringed Microsoft's exclusive copyright, and this

Court will grant Microsoft judgment in its favor on its claim of copyright infringement.[4]

## III.    Trademark Infringement, False Designation of Origin, and Unfair Competition

Microsoft alleges that Silberstein's activities constitute trademark infringement (Second

Claim) and false designation of origin (Third Claim) pursuant to the federal Lanham Act.  It also

asserts that Silberstein has engaged in unfair competition in violation of New Jersey's unfair

---

[4]Although Silberstein has not opposed Microsoft's motion for summary judgment, in his
Answer he appears to assert a statutory defense to Microsoft's copyright infringement claim.  He
claims that he sold software leftover from his business, pursuant to 17 U.S.C. § 117.  This
provision authorizes "an owner of a copy of a computer program" to make an additional copy or
adaptation of that program provided that such copy "is created as an essential step in the
utilization of the computer program in conjunction with a machine and that it is used in no other
manner," or that such a copy "is for archival purposes only."  17 U.S.C. § 117(a).  The statute
further provides that "[a]ny exact copies prepared in accordance with the provisions of this
section may be leased, sold, or otherwise transferred, along with the copy from which such
copies were prepared, only as part of the lease, sale, or other transfer of all rights in the
program."  17 U.S.C. § 117(b).  Thus, § 117(b) authorizes the lease or sale of exact copies made
by the *owner* of the copy.

This statutory defense does not aid Silberstein here.  First, Silberstein at best only held a
*license* to the copies of Windows XP Pro he purchased, as evidenced by his procurement of
license code keys.  The statutory allowance for distribution only applies to *owners* of copies, not
licensees.  *See, e.g.*, *Wall Data Inc. v. L. A. Cty. Sheriff's Dep't*, 447 F.3d 769, 785 (9th Cir.
2006).  Of course, Silberstein obtained his copies Windows XP Pro from an unauthorized
distributor, thus rendering even the validity of his license to be suspect.  Furthermore, courts
have interpreted § 117(a) narrowly, based on the provision's legislative history, "to permit
copying for the limited purpose of providing rightful possessors with access to programs for
internal use."  *Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F.
Supp. 468, 478 (D.N.J. 1998).  The "essential step" exception allows "only the copying of a
program into a computer's memory in order to permit the computer to execute the program."
*Allen-Myland, Inc. v. IBM*, 746 F. Supp. 520, 536 (E.D. Pa. 1990).  Section 117 does not excuse
Silberstein from liability for copying and distributing copies of protected, licensed software –
software he obtained from an unauthorized distributor – without authorization.  In any event, by
willfully failing to respond to Microsoft's motion, Silberstein has not provided this Court with
any argument as to why § 117 protects his conduct.

competition statute, N.J.S.A. § 56:4-1 (Fourth Claim) and New Jersey common law (Fifth Claim). This Court will grant summary judgment in Microsoft's favor on all of these claims.

"To establish trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, a plaintiff must prove that (1) the mark is valid and legally protectable, (2) it owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or services." *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008); *see also Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470 (3d Cir. 2005). A plaintiff alleging trademark infringement must also show that the infringer used the mark in interstate commerce. *See, e.g.*, *Sellers*, 411 F. Supp. 2d at 919; *Compusource*, 115 F. Supp. 2d at 806. As with copyright infringement, a plaintiff need not show a defendant's intent to infringe. *See Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1086 (D. Md. 1995).

The Lanham Act also imposes liability for a false designation of the origin of a good or service. 15 U.S.C. § 1125(a)(1).[5] A false designation of origin claim requires the same showing as does a trademark infringement claim. *See Sellers*, 411 F. Supp. 2d at 919. A plaintiff must show that a false designation of origin of a good or service had a substantial effect on interstate

---

[5]The false designation provision of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1),

commerce and created a likelihood of consumer confusion.  *See Compusource*, 115 F. Supp. 2d at 807.

The analysis for New Jersey statutory and common law unfair competition claims based on trademark infringement is the same as that under the Lanham Act.  *See J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law"); *Harlem Wizards Ent. Basketball, Inc. v. NBA Properties, Inc.*, 952 F. Supp. 1084, 1091 (D.N.J. 1997) ("N.J.S.A. 56:4-1 is the statutory equivalent of Section 43(a)(1) of the Lanham Act and the analysis for trademark infringement under New Jersey common law is the same as under Section 43(a)(1)").  Therefore, this Court will consider Microsoft's Lanham Act claims and its New Jersey state law claims together.

The key test under the Lanham Act is whether there is a likelihood of confusion.  *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 473 (3d Cir. 1994).  As the Third Circuit has stated:

> A likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.  The relevant inquiry is not whether consumer confusion is a possibility, but whether confusion is likely.

*Freedom Card*, 432 F.3d at 470 (citations and quotations omitted).

Microsoft asserts that Silberstein used four of its marks without authorization in connection with his distribution of counterfeit copies of Windows XP Pro: "MICROSOFT" for computer programs and computer programming services (Trademark and Service Registration No. 1,200,236); "MICROSOFT" for computer hardware and software manuals, newsletters, and computer documentation (Trademark Registration No. 1,256,083); "WINDOWS" for computer programs and manuals as a unit (Trademark Registration No. 1,872,264); and COLORED FLAG DESIGN for computer software and manuals sold as a unit therewith (Trademark Registration No. 2,744,843).  Microsoft has presented undisputed evidence of its registrations of these marks, and these registrations constitute prima facie evidence of the validity of the marks and Microsoft's exclusive right to use the marks for the purposes specified in the registration.  *See* 15 U.S.C. § 1057(b); *J&J Snack Foods Corp. v. Nestle USA, Inc.*, 149 F. Supp. 2d 136, 145-46 (D.N.J. 2001).  It is also undisputed that Silberstein trafficked in unauthorized, counterfeit copies of Windows XP Pro bearing all of the marks at issue by selling them through the Internet. Microsoft also distributes its software in all 50 states and around the world.  Therefore, the interstate commerce element is satisfied.  *See Grey*, 910 F. Supp. at 1087 ("Where, as here, Plaintiff is a large corporation conducting business in numerous states, and worldwide, a presumption arises that the Defendants' intrastate activities have a substantial effect on interstate commerce."); *see also Sellers*, 411 F. Supp. 2d at 919; *Compusource*, 115 F. Supp. 2d at 806.

Finally, the undisputed record establishes that Silberstein's use of Microsoft's marks in distributing counterfeit copies of Windows XP Pro created a likelihood of confusion.  "[T]he likelihood of consumer confusion is indisputable in cases involving the distribution of unauthorized and infringing items such as Microsoft's marks, which are recognized worldwide."

*Sellers*, 411 F. Supp. 2d at 919.  As a court in this District has held, "[i]t would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendant[], acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety.  Under these circumstances, the likelihood of consumer confusion, mistake or deception is clear."  *Microsoft Corp. v. CMOS Techs., Inc.*, 872 F. Supp. 1329, 1335 (D.N.J. 1994).

Silberstein distributed Windows XP Pro software bearing copies of Microsoft's registered marks and affirmatively represented to the public he was selling genuine, authorized Microsoft software, when in fact he was not.  This is a classic case of trademark infringement.  *See Grey*, 910 F. Supp. at 1088 ("Where, as here, the goods distributed by the [d]efendants are intentional copies and virtually identical to the trademark owner's goods, likelihood of confusion may be established at the summary judgment stage."); *see also Compusource*, 115 F. Supp. 2d at 807.  Similarly, with regard to false designation of origin, Silberstein's "use of Microsoft's marks in connection with unauthorized products falsely implies or represents Microsoft's sponsorship and approval of those products."  *Grey*, 910 F. Supp. at 1089.  Microsoft has provided sufficient, undisputed evidence to prove its trademark, false designation, and unfair competition claims under the Lanham Act and New Jersey statutory and common law.  This Court will grant Microsoft judgment in its favor on the Second, Third, Fourth, and Fifth Claims of its Complaint.

## IV.    Statutory Damages Under the Copyright Act and the Lanham Act

A prevailing plaintiff under both the Copyright Act and the Lanham Act may elect to recover either actual damages, based on its losses and defendant's profits, or an award of

statutorily specified damages.  17 U.S.C. § 504; 15 U.S.C. § 1117.  If a party elects statutory

damages, it need not prove its economic loss or a defendant's profits.  17 U.S.C. § 504(c); 15

U.S.C. § 1117; *see also, e.g.*, *Yash Raj Films (USA) Inc. v. SUR Sangeet Video Elecs. Inc.*, No.

06-3968, 2008 WL 544700, at *4 (D.N.J. Feb. 28, 2008).  The Copyright Act allows for statutory

damages of not less than $750 or more than $30,000 per copyright infringed, and up to $150,000

per copyright if the infringement was willful.  17 U.S.C. § 504(c).  The Lanham Act provides for

statutory damages of not less than $500 or more than $100,000 for each trademark infringed, or

up to $1 million per mark if the infringement was willful.  15 U.S.C. § 1117(c).[6]

 Microsoft may recover under both the Copyright Act and the Lanham Act, even though

Silberstein's infringement arises from a series of individual acts of distribution, because each

distribution constituted separate acts of copyright and trademark infringement.  *Microsoft Corp.*

*v. Tierra Computer, Inc.*, 184 F. Supp. 2d 1329, 1331 (N.D. Ga. 2001).  A court in this District

awarded Microsoft statutory damages under both Acts in a similar case without extended debate,

and this Court sees no reason why the same recovery should not be allowed here.  *See Microsoft*

*Corp. v. Gonzales*, No. 06-4331, 2007 WL 2066363, at *6 (D.N.J. July 13, 2007).  As the court

reasoned in *Tierra*,

---

 [6]These statutory amounts have been amended.  Effective October 13, 2008, Lanham Act
statutory damages are not less than $1,000 or more than $200,000 for each trademark
infringement, and up to $2 million for willful infringement.  Pub. L. No. 110-403, 122 Stat.
4256, 4259 (2008).  Microsoft filed its motion for summary judgment prior to the amendment
and relies upon the pre-amended version of the statute.  This Court will apply the pre-amendment
damages ranges "as there is no indication that the new statutory range applies retroactively."
*Lifted Research Group, Inc. v. Behdad, Inc.*, __ F. Supp. 2d __, 2008 WL 5159225, at *4 n.2
(D.D.C. Dec. 10, 2008); *see also Magna-RX, Inc. v. Holley*, No. 05-3545, 2008 WL 5067977, at
*3 n.4 (D. Ariz. Nov. 25, 2008).

> Defendants did not commit only one wrongful act. Had Defendants sold Plaintiff's computer programs without representing that they were Microsoft products, Defendants would have committed only copyright infringement. If Defendants had represented that the computer programs were Microsoft's, when in fact they were not, then Defendants violated the Lanham Act. While there was one act, there were two wrongs.

*Id.* Because the Lanham Act and the Copyright Act "provide separate remedies for distinct injuries, Microsoft may seek damages under each Act." *Compusource*, 115 F. Supp. 2d at 811. Furthermore, statutory damages under each Act "serve purposes in addition to compensation," so awarding damages under both statutes "does not violate the rule against double recoveries." *Tierra*, 184 F. Supp. 2d at 1331; *see also Microsoft Corp. v. Atek 3000 Computer Inc.*, No. 06-6403, 2008 WL 2884761, at *3 (E.D.N.Y. July 23, 2008); *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008); *Sellers*, 411 F. Supp. 2d at 921.

Microsoft has elected to pursue statutory damages up to the maximum, non-willful amount under both the Copyright Act and the Lanham Act. It seeks $30,000 for Silberstein's infringement of the Windows XP Pro copyright. Although it owns four trademarks relevant to Windows XP Pro, and this Court has held that Silberstein has infringed all of them, Microsoft only seeks damages for three of them, as Lanham Act allows statutory damages "per counterfeit mark." 15 U.S.C. § 1117(c)(1). Microsoft has registered the trademark "MICROSOFT" under two different classifications of goods – computer programs and computer manuals – and seeks damages only once for this mark. (Microsoft Br. at 17 n.12.) Therefore, Microsoft seeks statutory Lanham Act damages of $300,000 for Silberstein's trademark infringement, for a total in statutory damages of $330,000.

This Court may issue a specific award of statutory damages within its sound discretion, as the statutes allows damages within the stipulated ranges "as the court considers just." 17 U.S.C. § 504(c)(1); 15 U.S.C. § 1117(c)(1); *see also Gonzales*, 2007 WL 2066363, at *5 ("The Court has wide discretion to set an amount of statutory damages."). "In determining the amount of statutory damages to be awarded to a plaintiff, it is proper to consider: (1) the state of mind of the defendant with respect to the infringing activity, that is, whether the defendant was acting willfully, knowingly or innocently; (2) the need to deter future infringing activity; (3) the profits reaped by the defendants in connection with the infringement; and (4) the revenue lost by the plaintiff as a result of said infringement." *Yash Raj Films*, 2008 WL 544700, at *4. Because the two former factors "are difficult to monetize, the defendant's intent and behavior are the foremost consideration." *Gonzales*, 2007 WL 2066363, at *5.

Although Microsoft does not seek statutory damages for willful infringement, this Court may conclude from the undisputed record that Silberstein knowingly and willfully infringed Microsoft's intellectual property rights by selling his counterfeit copies of Windows XP Pro. Indeed, he continued his infringing conduct not only after being repeatedly contacted by Microsoft, but also even after Microsoft filed its Complaint in this case. Such continued infringement after notice of wrongdoing suggests at least that Silberstein acted in reckless disregard of Microsoft's intellectual property rights and was willfully blind to those rights. *See Microsoft Corp. v. Logical Choice Computers, Inc.*, No. 99-1300, 2001 WL 58950, at *10 (N.D. Ill. Jan. 22, 2001). Furthermore, at deposition, Silberstein expressed no qualms with his illegal activities; rather, he asserted that Microsoft was "overstepping legality." (Silberstein Dep. Vol. II at 45:23.) Given Silberstein's repeated, knowing infringements of Microsoft's copyright and

20

trademarks, an award of maximum non-willful damages is appropriate here, both in light of

Silberstein's conduct and to deter future infringing activity. *See Atek 3000*, 2008 WL 2884761,

at *4; *Sellers*, 411 F. Supp. 2d at 921; *Logical Choice*, 2001 WL 58950, at *11.

For these reasons, this Court will grant the maximum non-willful statutory damages that

it seeks under both the Copyright Act and the Lanham Act, in the amount of $330,000.

**V.      Attorneys' Fees and Costs**

Both the Copyright Act and the Lanham Act allow for recovery, in the court's discretion,

of reasonable attorneys' fees and costs.  17 U.S.C. § 505; 15 U.S.C. § 1117(a).  While the

Lanham Act limits attorneys' fees to "exceptional cases," 15 U.S.C. § 1117(a), the Copyright Act

grants attorneys' fees to the prevailing party as a matter of course, 17 U.S.C. § 505.  In similar

cases where Microsoft has proven that a software distributor infringed its copyright and

trademark rights, courts have awarded reasonable attorneys' fees and full costs. *See, e.g.*,

*Gonzales*, 2007 WL 2066363, at *6-7; *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883

(S.D. Ohio 2007); *Sellers*, 411 F. Supp. 2d at 922; *Compusource*, 115 F. Supp. 2d at 812.   In

light of Silberstein's repeated, knowing, willful infringement, this Court will award attorneys'

fees and costs to Microsoft pursuant to both statutes.  Microsoft represents that upon a favorable

resolution of its motion for summary judgment, it will submit a declaration in support of its

request for attorneys' fees and costs request.  This Court will order Microsoft to file such papers,

including descriptive time entries from its billing records, within 30 days of this Opinion and

Order.  Silberstein shall have 30 days to respond to Microsoft's submission, should he so choose.

Any such response shall be limited solely to Microsoft's request for attorneys' fees and costs.

## VI.     Permanent Injunction

Finally, Microsoft seeks a permanent injunction to restrain Silberstein from engaging in future infringing activity.  Both the Copyright Act and the Lanham Act authorize injunctive and equitable relief.  17 U.S.C. § 502(a); 15 U.S.C. § 1116(a).  In similar cases, courts have routinely granted permanent injunctive relief to prevent the infringing party from violating Microsoft's intellectual property rights.  *See, e.g.*, *Gonzales*, 2007 WL 2066363, at *7-8; *McGee*, 490 F. Supp. 2d at 882-83; *Sellers*, 411 F. Supp. 2d at 922.  With regard to the Copyright Act, the Supreme Court has noted that an injunction may not issue simply because infringement has been shown.  *eBay, Inc. v. Mercexhange, LLC*, 547 U.S. 388, 393-94 (2006) ("[T]his Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.").  The Supreme Court held in *eBay* that "well-established principles of equity" dictate that any plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Id.* at 391.  Courts in this District have applied similar factors in considering permanent injunctions in copyright and trademark cases.  For example, in *Chanel, Inc. v. Gordashevsky*, the court stated:

> Generally, to obtain a permanent injunction, a plaintiff must show
> that (1) the Court's exercise of equity jurisdiction is proper, (2) the
> Plaintiff succeeded on the merits, and (3) the balance of equities
> tips in favor of injunctive relief.  The first factor contains three
> sub-parts which require the plaintiff to show (1) plaintiff has no

adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses exist.

558 F. Supp. 2d 532, 539 (D.N.J. 2008) (citations omitted); *see also Gonzales*, 2007 WL 2066363, at *7 (applying same standard in Microsoft copyright and trademark infringement case).

Microsoft has shown all of these elements. Equity jurisdiction is proper under the Copyright Act and the Lanham Act, and Microsoft has succeeded on the merits. Microsoft has suffered irreparable injury by virtue of Silberstein's copyright infringement, the likelihood of confusion created by his Lanham Act violations, and the threat of his continued violations. *See Atek 3000*, 2008 WL 2884761, at *5; *McGee*, 490 F. Supp. 2d at 882. Silberstein's repeated acts of infringement, which continued after receiving notice from Microsoft of the illegality of his conduct and even after Microsoft filed its Complaint in this matter, demonstrates that the future threat of injury is real and legitimate. *See id.* Monetary relief alone would be inadequate to prevent future infringement, thus injunctive relief is necessary to provide an effective remedy in this case. *See Gonzales*, 2007 WL 2066363, at *7. By failing to oppose this motion, Silberstein has not presented any equitable defenses, and this Court sees no such defenses in this case. *See Gonzales*, 2007 WL 2066363, at *7. Finally, the balance of equities weighs in favor of injunctive relief here. Silberstein's distribution of Windows XP Pro knowingly and willfully violated the Copyright Act and the Lanham Act, and he acted with at least reckless disregard to Microsoft's rights in doing so. His conduct harms Microsoft and impairs the public interest in protecting copyrights and preventing consumer confusion and deception in the marketplace. *See id.* at 8; *see also McGee*, 490 F. Supp. 2d at 883. No harm will result to Silberstein from an

injunction because "an injunction will merely require Defendant to comply with the Copyright

Act and the Lanham Act."  *McGee*, 490 F. Supp. 2d at 883.

Based on these equitable considerations, this Court will grant Microsoft the injunctive

relief it seeks, and will permanently enjoin Silberstein, as an individual and doing business as

Investment Technologies, from imitating, copying, or making any other infringing use or

infringing distribution of Microsoft's protected software programs.

### *Conclusion and Order*

For the foregoing reasons, Microsoft's unopposed motion (Doc. No. 25) for summary

judgment is hereby GRANTED on all claims of Microsoft's Complaint.  It is hereby further

ORDERED that:

1.      Judgment be ENTERED in favor of Plaintiff Microsoft Corporation and against

        Defendant Lawrence Silberstein, an individual and d/b/a Investment

        Technologies, Inc., jointly and severally, for statutory damages under the

        Copyright Act and the Lanham Act in the amount of $330,000.

2.      Defendant shall be liable to Microsoft for reasonable attorneys' fees and costs.  It

        is hereby ORDERED that Microsoft submit a declaration in support of its request

        for reasonable attorneys' fees and costs, including descriptive time entries from its

        billing records, within 30 days of this Order.  Defendant shall have 30 days to

        respond to Microsoft's submission.  Any such response shall be limited solely to

        Microsoft's request for attorneys' fees and costs.  This Court will issue a final

        judgment on damages, including attorneys' fees and costs, in due course.  This

final judgment shall accrue interest, compounded annually, pursuant to 28 U.S.C. § 1961.

3.     Defendant Lawrence Silberstein, an individual and d/b/a Investment Technologies, Inc. (collectively "Defendant"), their directors, principals, officers, agents, servants, employees, representatives, successors and assigns, and all those acting in concert or participation with him shall be, and hereby are, PERMANENTLY ENJOINED and restrained from:

a.     imitating, copying, or making any other infringing use or infringing distribution of software programs, components, end user license agreements ("EULAs"), certificates of authenticity ("COAs") or items protected by Microsoft's registered trademarks and service mark, including, but not limited to, the following Trademark and/or Service Mark Registration Numbers:

    (1)     1,256,083 ("MICROSOFT");

    (2)     1,200,236 ("MICROSOFT");

    (3)     1,872,264 ("WINDOWS"); and

    (4)     2,744,843 (COLORED FLAG DESIGN);

or the software programs, components, EULAs, COAs, items or things protected by the following Certificate of Copyright Registration Number:

    (1)     TX 5-407-055 ("Windows XP Professional");

or any other works now or hereafter protected by any of Microsoft's trademarks or copyrights;

25

b.       manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any software program, component, EULA, COA, item or thing bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks or service mark, including, but not limited to, the Trademark and Service Mark Registration Nos. listed in Paragraph (a) above;

c.       using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks or service mark including, but not limited to, the Trademark and Service Mark Registration Nos. listed in Paragraph (a) above, in connection with the manufacture, distribution, offering for distribution, sale, offering for sale, advertisement, promotion, or display of any software, component, EULA, COA, item or thing not authorized or licensed by Microsoft;

d.       using any false designation of origin or false description which can or is likely to lead the trade or public or individuals erroneously to believe that any software, component, EULA, COA, item, or thing that has been manufactured, produced, distributed, offered for distribution, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Microsoft, when such is not true in fact;

e.      using the names, logos, or other variations thereof of any of Microsoft's copyright and/or trademark-protected software programs in any of Defendant's trade or corporate names;

f.      engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service mark and/or copyrights, or of Microsoft's rights in, or right to use or to exploit these trademarks, service mark, and/or copyrights; or constituting any dilution of Microsoft's name, reputation, or goodwill; and

g.      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs (a) through (f) above.

The Clerk shall mark this matter CLOSED.


Dated: January 27, 2009
Newark, New Jersey

                                    /s/ Harold A. Ackerman
                                    U.S.D.J.

27